# In the United States Court of Federal Claims

NOT FOR PUBLICATION

No. 12-518C

(Filed: April 15, 2013)

* * * * * * * * * * * * * * * * * * * *

BRADFORD METCALF,

          *Plaintiff,*

v.

THE UNITED STATES,

          *Defendant,*

* * * * * * * * * * * * * * * * * * * *

_____

## OPINION

_____

BRUGGINK, *Judge*.

      This is a challenge to the reduction in veterans benefits that follows after a disabled veteran is convicted of a felony and incarcerated. Plaintiff, Bradford Metcalf, who appears *pro se*, filed a complaint in this court on August 17, 2012, asserting, pursuant to statute and regulation, that he is not receiving the correct amount of disability benefits and that the Bureau of Prisons ("BOP") wrongfully applied portions of his disability benefits to cover his court costs and fines. In response, defendant filed a motion to dismiss for lack of subject matter jurisdiction and for failure to state a claim for which relief may be granted. The motion is fully briefed. Oral argument is unnecessary. For the reasons described below, we grant defendant's motion to dismiss.

BACKGROUND[1]

Mr. Metcalf entered into military service in 1970. In 1972, Mr. Metcalf was honorably discharged. At some point during his military career, Mr. Metcalf was injured or developed a disease. In 1973, Mr. Metcalf applied to the Department of Veterans Affairs ("VA") for and was granted disability benefits. The VA found that Mr. Metcalf was 10 percent disabled and plaintiff's disability benefits reflected that rate.

In 1998, Mr. Metcalf was convicted of a felony and incarcerated. Subsequently, the VA sent Mr. Metcalf a letter explaining that due to his incarceration, his benefits would be reduced by 50 percent beginning on July 25, 1999, pursuant to regulation. This letter is stamped with a date of February 15, 2000. The amount of benefits that Mr. Metcalf received from the VA was subsequently reduced. On November 27, 2001, Mr. Metcalf responded to the letter and asked the VA to send him the text of the statute or regulation that authorized the reduction in benefits. The VA sent Mr. Metcalf a letter on January 31, 2003, which states that the applicable regulation was attached. Mr. Metcalf asserts that the regulation was not attached. More than three years after receiving the VA's letter, Mr. Metcalf again inquired of the VA for the text of the statute or regulation that granted authority to reduce his disability benefits. Mr. Metcalf finally received a letter from the VA on March 18, 2008, which cited the Code of Federal Regulations, Title 38, section 3.665 as the relevant authority. Plaintiff was able to use that citation to obtain the text of the regulation and corresponding statute through the prison's computerized law library.

The relevant statute is 38 U.S.C. § 5313, which provides the following:

[A]ny person who is entitled to compensation . . . and who is incarcerated in a Federal, State, local, or other penal institution or correctional facility for a period in excess of sixty days for conviction of a felony shall not be paid such compensation . . . for the period beginning on the sixty-first day of such

---

[1] The facts are taken from plaintiff's filings and are presumed correct. We draw all reasonable inferences in plaintiff's favor for the purposes of defendant's motion to dismiss. *Henke v. United States*, 60 F.3d 795, 797 (Fed. Cir. 1995).

incarceration and ending on the day such incarceration ends, in an amount that exceeds—

(A) in the case of a veteran with a service-connected disability rated at 20 percent or more, the rate of compensation payable under section 1114(a) of this title; or

(B) in the case of a veteran with a service-connected disability not rated at 20 percent or more . . . one-half of the rate of compensation payable under section 1114(a) of this title.

38 U.S.C. § 5313(a)(1) (2006).[2]

Section 1114(a) of Title 38 sets the rate of compensation referred to in subparagraphs A and B above at $123 per month. 38 U.S.C. § 1114(a) (2006 & Supp. V 2011). The net effect of 38 U.S.C. § 5313, in conjunction with 38 U.S.C. § 1114(a), is that an incarcerated felon who has a disability rating of less than 20 percent (like Mr. Metcalf) will only receive half of $123 per month after the first sixty days of incarceration, until he or she is released.[3]

Under 38 C.F.R. § 3.665, which implements 38 U.S.C. § 5313, veterans disability benefits will be reduced if the incarcerated person is any one of the following:

(1) A person serving a period of incarceration for conviction of a felony committed after October 7, 1980.

---

[2] There is no significant difference between 38 U.S.C. § 5313 (1993), which was the version of the statute in effect when plaintiff's disability benefits were first reduced, and the current version of the statute.

[3] Although 38 U.S.C. § 5313 sets the standard rate of disability benefits, it is not the only statute, regulation, or circumstance that affects the amount of money the incarcerated veteran ultimately receives. For example, plaintiff alleges that some of his benefits have been withheld by the BOP to offset court costs and fines through the BOP's Financial Responsibility Program. *See* 18 U.S.C. § 3613 (2006) (permitting the United States to "enforce a judgment imposing a fine" against "all property or rights to property of the person fined" and describing as liens fines applied during sentencing pursuant to 18 U.S.C. § 3571 and restitution assessed under 18 U.S.C. §§ 2248, 2259, 2264, 2327, 3663, 3663A, or 3664).

3

(2) A person serving a period of incarceration after September 30, 1980 (regardless of when the felony was committed) when the following conditions are met:

(i) The person was incarcerated on October 1, 1980; and

(ii) An award of compensation . . . is approved after September 30, 1980.

(3) A veteran who, on October 7, 1980, was incarcerated in a Federal, State, or local penal institution for a felony committed before that date, and who remains so incarcerated for a conviction of that felony as of December 27, 2001.

38 C.F.R. § 3.665(c) (2012).

On March 10, 2009, Mr. Metcalf filed a claim with the VA asserting that 38 U.S.C. § 5313 and 38 CFR § 3.665 had been misapplied. Plaintiff sought approximately $6,000 in unpaid disability benefits because, he claimed, the language of the statute and regulation did not apply to someone who began receiving disability benefits prior to September 30, 1980. The VA denied plaintiff's claim on June 30, 2009, with the following explanation:

Title 38 Code of Federal Regulations § 3.665(c) has two related clauses. As you pointed out, 3[.]665(c)(2) relates to awards of compensation made on or after September 30, 1980. *However*, 3.665(c)(1), which applies to "a person serving a period of incarceration for a conviction of a felony committed after October 7, 1980," relates specifically to your case where an award of compensation was made at any point *and* the veteran was incarcerated after October 7, 1980.

The evidence shows that you were granted compensation benefits prior to September 30, 1980 and were incarcerated after October 7, 1980. Therefore, Title 38 Code of Federal Regulations § 3.665(c)(1) applies and the adjustment to your VA benefits is required by federal law.

Pl.'s Resp. to Def.'s Mot. to Dismiss Ex. I1. This letter contained an attachment explaining the process plaintiff could follow if he disagreed with the VA's determination.

4

Mr. Metcalf asserted his disagreement with the VA's decision in a letter dated July 22, 2009. In response, the VA sent a letter to plaintiff dated September 23, 2009, which further explained how to appeal. Then, on March 2, 2010, the VA sent a letter to Mr. Metcalf stating that it had erred by providing Mr. Metcalf with information on how to appeal the June 30, 2009 letter because that letter was only informational and not decisional. The VA explained that the action to reduce Mr. Metcalf's benefits was taken ten years earlier and, at that time, Mr. Metcalf was provided notice of such action and his appeal rights. Mr. Metcalf had been given until September 18, 2001 to appeal but he had not done so. In his March 17, 2010 letter, Mr. Metcalf attempted to reassert his appeal and insisted that the agency had dealt fraudulently with him, and that it did not became apparent to him until he gained access to the statutes and regulations. There was no further correspondence from the VA.

Plaintiff filed his petition in this court on August 17, 2012, seeking review of the VA's action reducing his benefits. Plaintiff also requests back pay in the amount of approximately $12,000, a determination that his future benefits should be assessed at the 10-percent rate, and an order directing the BOP to cease withholding portions of his disability benefits. We are unable to grant plaintiff the relief he seeks for the reasons explained below.

DISCUSSION

I. Jurisdiction

We read plaintiff's complaint as articulating five theories for why he should prevail. *See Haines v. Kerner*, 404, U.S. 519, 520 (1972) (stating that general allegations made by a *pro se* plaintiff are held to a "less stringent standard[] than formal pleadings drafted by lawyers"). "While a *pro se* plaintiff is held to a less stringent standard than that of a plaintiff represented by an attorney, the *pro se* plaintiff, nevertheless, bears the burden of establishing the Court's jurisdiction by a preponderance of the evidence." *Riles v. United States*, 93 Fed. Cl. 163, 165 (2010) (citing *Hughes v. Rowe*, 449 U.S. 5, 9 (1980); *Taylor v. United States*, 303 F.3d 1357, 1359 (Fed. Cir. 2002)); *see Henke*, 60 F.3d at 799 ("The fact that [plaintiff] acted *pro se* in the drafting of his complaint may explain its ambiguities, but it does not excuse its failures, if such there be."). We must determine whether we have jurisdiction over any of plaintiff's claims.

5

Under the Tucker Act, we have limited jurisdiction to adjudicate "any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1) (2006). While the Tucker Act constitutes a waiver of sovereign immunity, it does not give rise to a substantive cause of action. *See United States v. Mitchell*, 463 U.S. 206, 216 (1983). "[I]n order to come within the jurisdictional reach and the waiver of the Tucker Act, a plaintiff must identify a separate source of substantive law that creates the right to money damages." *Fisher v. United States*, 402 F.3d 1167, 1172 (Fed. Cir. 2005) (en banc). A source of law is money-mandating if it is "reasonably amendable to the reading that it mandates a right of recovery in damages." *United States v. White Mountain Apache Tribe*, 537 U.S. 465, 473 (2003). Additionally, a plaintiff must make "a non-frivolous assertion that it is within the class of plaintiffs entitled to recover under the money-mandating source." *Jan's Helicopter Serv. Inc. v. Fed. Aviation Admin.*, 525 F.3d 1299, 1307 (Fed. Cir. 2008). In sum, we have jurisdiction when a claim falls within the waiver of sovereign immunity described in the Tucker Act, if that claim is based on a substantive money-mandating source of law, and if plaintiff is within the class that is entitled to recover under that source of law.

First, plaintiff claims that the VA did not treat prisoners consistently in calculating veterans benefits. The basis for his claim is that 38 U.S.C. § 5313 awards higher payments to those with a disability rating of 20 percent or more. He asserts that this constitutes a violation of the Constitution, specifically, the Equal Protection Clause of the Fourteenth Amendment. That provision has been held not to be money-mandating, however, and therefore it cannot be the basis of our jurisdiction. *LeBlanc v. United States*, 50 F.3d 1025, 1028 (Fed. Cir. 1995); *see Davis v. United States*, 36 Fed. Cl. 556, 559 (1996) (holding that this court lacked jurisdiction to adjudicate plaintiff's due process claims because the source of law was not money-mandating and constitutional claims based on the VA's actions regarding disability benefits may be pursued only through the VA's established process).[4]

---

[4] Insofar as plaintiff's first argument could be described as challenging the VA's practice of calculating the reduced rate of disability benefits for incarcerated felons, that claim would fail to generate jurisdiction in this court for the same reasons that we lack jurisdiction over plaintiff's third argument.

Plaintiff's second claim is that the BOP violated 38 U.S.C. § 5301(a)(1), when it began withholding a portion of his benefits. That code section provides the following:

> Payments of benefits due or to become due under any law administered by the Secretary shall not be assignable except to the extent specifically authorized by law, and such payments made to, or on account of, a beneficiary shall be exempt from taxation, shall be exempt from the claim of creditors, and shall not be liable to attachment, levy, or seizure by or under any legal or equitable process whatever, either before or after receipt by the beneficiary. *The preceding sentence shall not apply to claims of the United States arising under such laws . . . .*

38 U.S.C. § 5301(a)(1) (2006) (emphasis added). Plaintiff requests that we enjoin the BOP from garnishing his VA benefits. Apparently some of the amounts withheld offset plaintiff's court costs and fines.[5]

As defendant correctly points out, we lack jurisdiction to grant the equitable relief that plaintiff seeks. "Except in strictly limited circumstances, *see* 28 U.S.C. § 1491(b)(2), there is no provision in the Tucker Act authorizing

---

[5] To the extent that plaintiff were to request a refund for monies withheld by the BOP under a theory of illegal exaction, we would have jurisdiction to hear such a claim. *Norman v. United States*, 429 F.3d 1081, 1095 (Fed. Cir. 2005); *Eastport S.S. Corp. v. United States*, 372 F.2d 1002, 1007 (Ct. Cl. 1967) (describing an illegal exaction claim as one that "assert[s] that the value sued for was improperly paid, exacted, or taken from the claimant in contravention of the Constitution, a statute, or a regulation"). Rather than giving plaintiff a basis for making a claim against the government, however, 38 U.S.C. § 5301(a)(1) and 18 U.S.C. § 3613 have the opposite effect. They eliminate any bar to the Federal Government attaching or seizing VA benefits. Additionally, the claim appears to be barred by the statute of limitations. The main events that plaintiff complains of began in 1999. Plaintiff has not alleged the specific date of garnishment. In light of defendant's assertion that the limitations period has run, and plaintiff's burden of proof on this issue, we are entitled to assume that the limitations period has run. *See* discussion *infra* Part II.

the Court of Federal Claims to order equitable relief." *Massie v. United States*, 226 F.3d 1318, 1321 (Fed. Cir. 2000).

Plaintiff's third argument is the same one that he asserted before the VA, namely that 38 U.S.C. § 5313 and 38 C.F.R. § 3.665 were misapplied[6] in his case because he began receiving disability benefits before September 30, 1980. Defendant asserts that "Congress precludes courts, other than the Veterans Court or the Federal Circuit, from reviewing [] veterans benefit determinations." Def.'s Mot. to Dismiss 3-4. Defendant's argument is grounded in 38 U.S.C. § 511, which provides:

> (a) The Secretary [of Veterans Affairs] shall decide all questions of law and fact necessary to a decision by the Secretary under a law that affects the provision of benefits by the Secretary to veterans or the dependents or survivors of veterans. Subject to subsection (b), the decision of the Secretary as to any such question shall be final and conclusive and may not be reviewed by an other official or by any court, whether by an action in the nature of a mandamus or otherwise.

38 U.S.C. § 511(a). We have "'repeatedly held that [the United States Court of Federal Claims] has no jurisdiction to hear claims for denial of veterans benefits.'" *Smalls v. United States*, 87 Fed. Cl. 300, 306 (2009) (quoting *Jackson v. United States*, 80 Fed. Cl. 560, 566 (2008) (citing *Ferreiro v. United States*, 72 Fed. Cl. 1, 6 (2006) *aff'd* 501 F.3d 1349 (Fed. Cir. 2007); *Van Allen v. United States*, 66 Fed. Cl. 294, 296 (2005))); *see United States v. Bournes*, 133 S. Ct. 12, 18 (2012) ("The Tucker Act is displaced, however, when a law assertedly imposing monetary liability on the United States contains its own judicial remedies."). Instead, the VA, which administers veterans benefits, receives the veteran's application, decides whether and at what rate to pay disability benefits, and processes the veteran's disagreement

---

[6] Plaintiff actually uses the word "fraud" to describe the manner in which 38 U.S.C. § 5313 and 38 C.F.R. § 3.665 were applied to his case. A claim for fraud sounds in tort. *See Brown v. United States*, 105 F.3d 621, 623 (Fed. Cir. 1997). The Tucker Act explicitly excludes causes of actions sounding in tort from its waiver of sovereign immunity. 28 U.S.C. § 1491(a)(1). Thus, we do not have jurisdiction to entertain plaintiff's claims of fraud. *Brown*, 105 F.3d at 623.

with said decision. 38 U.S.C. § 511(a); *see Smalls*, 87 Fed. Cl. at 306 (describing the procedure for appealing a decision regarding veterans benefits). The veteran must assert his disagreement and appeal within one year. 38 U.S.C. § 7105(b)(1). In response to the veteran's disagreement with the initial determination, the Board of Veterans Affairs will reevaluate the claim and issue a final decision. 38 U.S.C. § 7104. If the veteran is not satisfied with the decision of the Board of Veterans Affairs, he may exercise his right to appeal within 120 days to the Court of Appeals for Veterans Claims. 38 U.S.C. §§ 7252, 7266. Some unfavorable decisions may then be appealed to the Court of Appeals for the Federal Circuit. 38 U.S.C. § 7292; *see Wanless v. Shinseki*, 618 F.3d 1333, 1334-36 (Fed. Cir. 2010) (affirming the Court of Appeals for Veterans Claims' decision maintaining plaintiff's reduction in disability benefits due to his status as an incarcerated felon). Noticeably absent from this sequence of appeals is review by the United States Court of Federal Claims. *See Jackson v. United States*, 242 F. App'x 698, 700-701 (Fed. Cir. 2007) (per curiam) (citing *Van Allen*, 66 Fed. Cl. at 295-96). Thus, we do not have jurisdiction to assess the merits of plaintiff's claim that the VA misapplied the law when it reduced his disability benefits.

Fourth, plaintiff argues that 38 C.F.R. § 3.665 is void for vagueness. As defendant points out, any direct challenge to the regulation pursuant to 38 U.S.C. § 502 should have been directed to the Court of Appeals for the Federal Circuit: "An action for judicial review under 38 U.S.C. § 502 of a rule or regulation of the Department of Veterans Affairs must be filed with the clerk within 60 days after issuance of the rule or regulation or denial of a request for amendment or waiver of the rule or regulation." United States Court of Appeals for the Federal Circuit Rules of Practice, Rule 47.12 (2011). Again, plaintiff's theory is not properly before this court. *See Davis v. United States*, 36 Fed. Cl. 556, 559 (1996).

Finally, plaintiff alleges that the United States Government is contractually obligated to pay plaintiff the full amount of his VA benefits because he signed a contract when he entered the military in 1970 and because 38 U.S.C. § 5313 had not been adopted at that time and was therefore not part of the contractual "bargain." Persons who entered into military service at that time expected to receive disability benefits under the conditions established as of 1970, according to plaintiff. Plaintiff characterizes 38 U.S.C. § 5313 as an *ex post facto* law which should not bind him because he did not have the opportunity to consider its significance when he entered the military.

Although defendant does not directly respond to this argument, we need no assistance in discerning its shortcomings. The assertion that 38 U.S.C. § 5313 is an improper *ex post facto* law amounts to a direct challenge to the constitutionality of the statute and thus is not a claim based on enforcement of veterans benefit provisions to obtain money. We therefore do not possess jurisdiction to entertain such an argument. *See LeBlanc*, 50 F.3d at 1028. In any event,"The only specific bar in the Constitution is against *ex post facto* criminal laws." *Hosp. Data Ctr. of S.C., Inc. v. United States*, 225 Ct. Cl. 158, 163 n.9 (1980) (citing U.S. Const. art. I, § 9, cl. 3; *Ky. Union Co. v. Kentucky*, 219 U.S. 140, 153 (1911)). Perhaps more basically, while we have jurisdiction over general claims based on a contract with the United States, 28 U.S.C. § 1491(a)(1), plaintiff's right to receive disability benefits is fixed by statute and not by contract. *See United States v. Larionoff*, 431 U.S. 864, 869 (1977) ("[T]he rights of affected services members must be determined by reference to the statutes and regulations . . . rather than ordinary contract principles."); *Bell v. United States*, 366 U.S. 393, 401 (1961) ("[C]ommon-law rules governing private contracts have no place in the area of military pay. A soldier's entitlement to pay is dependent upon statutory right."). Finally, as we explain below, the statute of limitations prevents us from exercising any jurisdiction we might otherwise possess.

## II.     Statute of Limitations

Even if a money-mandating source of law were available to offer the requested relief, the statute of limitations would bar us from examining the merits of plaintiff's claims. Under the Tucker Act, "[e]very claim of which the United States Court of Federal Claims has jurisdiction shall be barred unless the petition thereon is filed within six years after such claim first accrues." 28 U.S.C. § 2501. The statute of limitations operates as a jurisdictional bar; the waiver of sovereign immunity contained in the Tucker Act is conditioned upon suit being brought within six years after the claim accrues. *Sabree v. United States*, 90 Fed. Cl. 683, 691 (2009) (citing *Caguas Cent. Fed. Sav. Bank v. United States*, 215 F.3d 1304, 1310 (Fed. Cir. 2000)). Generally, "a claim accrues when all events necessary to fix the Government's liability have occurred," *L.L.S. Leasing Corp. v. United States*, 695 F.2d 1359, 1365 (Fed. Cir. 1982), and "the plaintiff was or should have been aware of their existence," *Hopland Band of Pomo Indians v. United States*, 855 F.2d 1573, 1577 (Fed. Cir. 1988). The requirement that plaintiff know or should have known applies only to the material facts that give rise to the claim. *Hopland Band*, 855 F.2d at 1577.

Defendant asserts that plaintiff's claim accrued in 1999 when the VA reduced Mr. Metcalf's benefits because that was the governmental action on which the alleged liability is premised. Plaintiff argues that his claims should not be barred by the statute of limitations because he did not gain access to the applicable statutes and regulation and thereby discover the alleged "fraud" until 2008. However, "subjective ignorance of the law giving rise to [the] claim, even if predicated on misleading statements relating to those legal rights, does not toll the accrual of the statute of limitation." *Shoshone Indian Tribe of Wind River Reservation, Wyo. v. United States*, 672 F.3d 1021, 1032 (Fed. Cir. 2012). Although plaintiff did not know the legal basis for the action, he knew that his benefits had been reduced in 1999. Even if we set the date of accrual in 2000, when the letter from the VA explained to Mr. Metcalf the reason for the reduction in his benefits, Mr. Metcalf's complaint would have been untimely after 2006. When plaintiff filed his complaint in 2012, however, he was well past the six-year limitation period. Accordingly, Mr. Metcalf's claims are barred by the statute of limitations.

## CONCLUSION

For the reasons stated, we lack jurisdiction over plaintiff's claims. Defendant's motion to dismiss is granted. Plaintiff's complaint is hereby dismissed pursuant to Rule 12(b)(1). The Clerk is directed to enter judgment accordingly. No costs.

ERIC G. BRUGGINK
Judge

11